HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CANYON PROPERTIES, LLC, a Washington Limited Liability Company, and DONALD POLLOCK, a single man,<br><br>Plaintiffs,<br>v.<br><br>PIERCE COUNTY, a Washington Municipal Corporation,<br><br>Defendant. | CASE NO. 3:19-cv-06168-RBL<br><br>ORDER ON DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6)<br><br>DKT. # 8 |

THIS MATTER is before the Court on Defendant Pierce County's Motion to Dismiss Plaintiff Canyon Properties, LLC, and Donald Pollock's (collectively referred to as "Pollock") federal claims. Dkt. # 8. This case arises out of the County's enforcement of a warrant of abatement on September 23, 2019, which resulted in the removal of what Pollock characterizes as his "historic military vehicle and parts collection," [Dkt. # 11 at 3] but the County characterizes as "junk" [Dkt. # 8 at 3].

According to the Complaint, Pollock is the managing member of Canyon Properties, LLC, which owns property located at 13922 Canyon Rd. E., Puyallup, WA 98373. Dkt. # 1-2 at 1. Pollock alleges that he has been adding to his collection of historic war vehicles for over 40

years and houses his collection on his Puyallup property. *Id*. at 2. In 2008, Pierce County issued a conditional use permit authorizing Pollock to operate a historic war salvage yard on his property. *Id*.

However, on March 21, 2019, Pierce County filed a nuisance abatement action seeking to make Pollock stop operating a transient RV park and storing junk vehicles but allowing him to continue the activities allowed under the permit. *Id*. at 3. Pollock alleges that he complied with the subsequent order of abatement, but the County obtained a warrant anyway. *Id*. at 3-4. On October 14, 2019, County enforcement official Jason Arbogast and two Pierce County sheriffs went to Pollock's property in the early morning when Pollock was away. *Id.* at 4. When Pollock was informed of this, he traveled to the site but was ordered off his property and apparently treated rudely. *Id*. His collection of vehicles was removed pursuant to the warrant. *Id*. at 5.

Pollock alleges that this type of enforcement action is "apparently the practice and custom of Pierce County." *Id*. at 6. In support of this allegation, the Complaint identifies another abatement action that played out similarly to the one regarding Pollock's property. *Id*. at 6-7. That action, which involved property belonging to Clarence May, is also the subject of a lawsuit before this Court and is being handled by the same law firm. *Id*.; *see also Clarence May v. Pierce Cty.*, No. 3:19-cv-06167-RBL (W.D. Wash. 2019).

When it comes to Pollock's claims, the Complaint is somewhat confusing. *Id*. at 8-10. Pollock appears to allege takings and due process claims under the United States and Washington State Constitutions and requests declaratory relief. *Id*. The Complaint also asks the Court to "declare that Pierce County committed a USC Section 1983 violation" and asks for damages. *Id*. at 10. It is unclear which claims Pollock believes support an award of damages vs. declaratory relief, or what Pollock's theory of 1983 liability is.

1       In its Motion to Dismiss, the County argues that Pollock's 1983 claim must be dismissed because Pollock fails to identify a "policy or custom" of constitutional violations, as required for governmental entity liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 659 (1978). The County also argues that the Fifth Amendment's Taking Clause is inapplicable here because the removal of Pollock's property was accomplished pursuant to the County's police power, not eminent domain. Finally, the County contends that Pollock's due process claim is not ripe because he has other administrative and state law remedies available to recover his property.

      In response, Pollock argues that his 1983 claim is viable because the County was acting pursuant to its "official policy embodied in Pierce County Code 8.08.080." Dkt. # 11 at 9. Pollock also confusingly states that he has "asserted a single federal claim: a 42 USC Section 1983 claim," ignoring the fact that his complaint seems to request independent relief under the U.S. Constitution. *Id*. at 1. He nonetheless goes on to defend his Constitutional due process claim from the County's contention that it is unripe. *Id*. at 9-11.

      Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007);

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *id.*).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

The Court is somewhat mystified about what Pollock's claims are. The Complaint seems to request independent relief under the U.S. Constitution, but Pollock's Opposition brief insists that his only federal claim is under § 1983. The Complaint, however, does not make clear what his constitutional theory of 1983 liability is—does it encompass both Takings and Due Process Clause violations, only one of those, or something else entirely? As Pollock must be aware, "[section 1983] merely provides a remedy for the violation of rights conferred by the Constitution or other statutes," and the requirements for claims vary depending on the constitutional right at issue. *Maher v. Gagne*, 448 U.S. 122, 129 (1980). "[O]ne cannot go into court and claim a 'violation of § 1983'-for § 1983 [alone] does not protect anyone against anything." *Mishler v. Nevada State Bd. of Med. Examiners*, 896 F.2d 408, 411 (9th Cir. 1990)

(Leavy, J., dissenting) (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)).

Rather than read the tea leaves of the Complaint, the Court will take Pollock at his word that his only federal claim is under § 1983 and that his other allegations regarding constitutional violations merely form the basis of his 1983 claim. Whatever constitutional theory underlies his 1983 claim, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Rather, "[i]n order to establish liability for governmental entities under *Monell*, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Here, Pollock infers a county-wide custom based solely on one other allegedly similar abatement action: the enforcement against Clarence May. Complaint, Dkt. # 1-2, at 6-7. This is not enough to establish a custom or policy of unconstitutional action by the County. Pollock argues that it is sufficient for a 1983 action that the County was acting according to its code, but this displays a fundamental misunderstanding of how 1983 *Monell* liability works. Imposing liability for unconstitutionally enforcing a constitutional law in isolated instances would amount to precisely the type of *respondeat superior* liability that was rejected in *Monnel*. If Pollock

wishes to assert a 1983 claim against the County, rather than the individuals that carried out or ordered the abatement action, he will have to allege concrete facts showing a policy or custom of unconstitutional enforcement of Pierce County Code 8.08.080 or some other law. Pollock's 1983 claim, which he concedes is his only federal claim, is dismissed.

That said, it is not impossible as a matter of law that Pollock could remedy the deficiencies with his Complaint. The Court accordingly grants leave to amend. In addition to remedying the substantive problems with his claim(s), Pollock should take this opportunity to improve the clarity of his Complaint. The Court recommends that Pollock clearly delineate his claims, preferably by describing each one under its own heading, and explain the legal theory behind each claim (i.e., explain exactly how the alleged facts give rise to each violation). May should also be sure to explain the constitutional basis for his 1983 claim, since that statute relies on a constitutional violation to support a claim. This will help avoid the confusion and semantic quibbling that pervaded these briefs and save the Court from wasting more time trying to divine exactly what claims are at issue.

For these reasons, the County's Motion is GRANTED and Pollock's 1983 claim is DISMISSED without prejudice.

IT IS SO ORDERED.

Dated this 11th day of February, 2020.

Ronald B. Leighton
United States District Judge